IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| TERRY K. OFORI, | ) | |
| Plaintiff, | ) | Civil Case No. 7:20-cv-00344 |
| v. | ) | |
| | ) | By: Elizabeth K. Dillon |
| LESLIE J. FLEMING, *et al.*, | ) | United States District Judge |
| Defendants. | ) | |

## MEMORANDUM OPINION

Plaintiff Terry K. Ofori, proceeding *pro se*, filed this civil rights action pursuant to 42

U.S.C. § 1983.  This case was created after being severed from another case, *Ofori v. Clarke*, No.

7:18-cv-587 (W.D. Va.), in which Ofori was directed to file an amended complaint without

misjoined defendants and claims.  Although Ofori failed to comply with the court's instructions

in that regard, the court nonetheless allowed some of his claims to proceed, severing them into

separate cases.  This case consists of claims in Count IV of his amended complaint in that case,

titled "Religious Claims."  In general terms, Ofori—who is a Sunni Muslim—alleges that

various Virginia Department of Corrections (VDOC) policies, or policies or practices at Wallens

Ridge State Prison (WRSP), where he was housed at all relevant times and where he remains,

interfered with his ability to practice his religion and intentionally discriminated against Sunni

Muslims, as compared to other religious groups.

After this case was created and the defendants filed a motion to dismiss, Ofori failed to

timely respond to defendants' motion.  The court therefore dismissed his case for failure to

prosecute.  (Dkt. No. 22.)  Ofori later filed a motion to reopen the case, which the court granted.

(Dkt. No. 25.)  Ofori filed several motions to amend his complaint, and the court allowed

amendment in an order entered October 4, 2021.  (Dkt. No. 41.)  In that order, the court noted

that Ofori's second amended complaint, the operative complaint, consisted of Dkt. No. 38-2.

After allowing the amendment, the court also denied as moot defendants' motion to dismiss the prior complaint. (*Id.*)

Thereafter, in response to the second amended complaint, defendants filed a second motion to dismiss (Dkt. No. 50), which remains pending before the court and is addressed herein. After seeking and receiving an extension of time to respond to the motion to dismiss, Ofori instead filed another motion to amend with a proposed third amended complaint (Dkt. No. 55), but he did not file a proper, timely response to the motion to dismiss. Defendants opposed allowing amendment (Dkt. No. 56), and Ofori filed what he called "Objections," to that opposition. (Dkt. No. 57.) The objections seem to be both a (late) response to the motion to dismiss and a reply in further support of his motion to amend. Regardless of its proper characterization, the court also has considered that submission.

Approximately six weeks after filing his motion to amend, Ofori filed a revised proposed third amended complaint, asking the court to consider that third amended complaint instead of the one filed with his February 2022 motion to amend. (Dkt. No. 58.) Per his request, the court will treat the second version of Ofori's third amended complaint (Dkt. No. 58-1) as the proposed amended complaint that he seeks leave to file with his motion to amend.

For the reasons set forth herein, the court concludes that amendment would be futile as to most of Ofori's claims, but a few of his claims, with his amendments, would survive dismissal. The court further concludes that his amendments are not overly prejudicial or brought in bad faith. The court will therefore grant in part Ofori's motion to amend and allow his third amended complaint as the operative complaint. Even with amendment, however, most of his claims are subject to dismissal. Thus, the court also will grant in part and deny in part defendants' motion to dismiss. The court will require the remaining defendants to file an answer to the third

amended complaint and will direct them to file a motion for summary judgment as to Ofori's remaining claims.

## I. BACKGROUND

In his second amended complaint (Dkt. No. 38-1), Ofori asserts claims under 42 U.S.C. § 1983, alleging violations of his First Amendment right to freely practice his religion, and also claims that defendants violated the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc-1, *et seq.* He also references alleged violations of his due process and equal protection rights, among others.[1]

Ofori's various complaints, while lengthy and containing numbered paragraphs, do not specifically delineate separate claims nor do they identify clearly which defendants are being named as defendants as to certain allegations. Defendants construe Ofori's second amended complaint as asserting eight claims, and Ofori has not disputed that those are his intended claims. As best the court can tell, Ofori's proposed third amended complaint (Dkt. No. 58-1) advances the same basic claims, although they are in a different order and the proposed third amended complaint contains additional, or different, facts in support.[2]

The court thus construes both his second amended and his third amended complaint as asserting the following claims:

1. Islamic religious services at WRSP are separated into smaller groups, in violation of the First Amendment, the Equal Protection Clause of the Fourteenth Amendment, and RLUIPA. (2nd Am. Compl. ¶¶ 6–10; 3rd Am. Compl. ¶¶ 16–19.)

---

[1] Ofori also refers to the Religious Freedom Restoration Act ("RFRA") (2nd Am. Compl. ¶ 34), but—as defendants correctly note—any claim under either the federal or state RFRA fails as a matter of law. The federal RFRA, 42 U.S.C. § 2000bb, *et seq.* is unconstitutional as applied to state and local governments. *City of Boerne v. Flores*, 521 U.S. 507, 536 (1997). The Virginia RFRA expressly excludes the Virginia Department of Corrections from its coverage. Va. Code § 57-2.02(A).

[2] In his proposed third amended complaint, Ofori also includes allegations that post-date the complaint in this case, such as events that occurred in 2021. He specifically states, however, that he is not bringing claims based on those facts and is not trying "to litigate facts that post-date the filing of his case." He presents them only "to show that conditions are the same." (3rd Am. Compl. ¶ 47.)

2. Islamic television channels are not made available to inmates, and visitation is not granted for Muslim holy days, in violation of the First Amendment, the Equal Protection Clause, and RLUIPA.  (2nd Am. Compl. ¶¶ 11–12; 3rd Am. Compl. ¶¶ 35–37.)

3. Ofori is not permitted to pray in the pod or during outdoor recreation, in violation of the First Amendment, the Eighth Amendment, the Equal Protection Clause, and RLUIPA.  (2nd Am. Compl. ¶¶ 13–15; 3rd Am. Compl. 13–15.)

4. Staff supervisors are not posted in the room during Muslim religious services, in violation of the First Amendment, the Eighth Amendment, and RLUIPA.  (2nd Am. Compl. ¶¶ 16–19; 3rd Am. Compl. ¶¶ 24–27.)

5. Ofori has been assessed monetary charges for accepting meal trays in the daytime during Ramadan, in violation of the First Amendment, the Takings Clause of the Fifth Amendment, the Due Process Clause of the Fourteenth Amendment, and RLUIPA. (2nd Am. Compl. ¶ 20; 3rd Am. Compl. ¶¶ 32–34.)

6. Ofori has been prevented from registering for Islamic programs, in violation of the First Amendment and RLUIPA.  (2nd Am. Compl. ¶¶ 21–24; 3rd Am. Compl. ¶¶ 10–12.)

7. Ofori cannot access a bathroom, sink, or other sanitary place to clean himself before or during religious services, in violation of the First Amendment, the Equal Protection Clause, and RLUIPA.  (2nd Am. Compl. ¶¶ 25–27; 3rd Am. Compl. ¶¶ 28–31.)

8. Ofori has been prevented from (a) getting on the Ramadan list, (b) attending Eid-ul-Adha service, and (c) attending the Wednesday Taleem service, in violation of the First Amendment and RLUIPA.  (2nd Am. Compl. ¶¶ 28–29; 3rd Am. Compl. ¶¶ 38–41.)[3]

There are currently only twelve defendants in the case, but the proposed third amended complaint lists thirteen defendants, to whom Ofori assigns a letter and then refers to them only by letter.  The proposed additional defendant is the last one listed, "Mr. R.J. Cochrane, [who] was a [lieutenant], then a Captain at WRSP." (3rd Am. Compl. 2.)  The defendants are:

    (A)    Mr. Harold Clarke, VDOC Director
    (B)    Mr. David Robinson, Chief of Corrections Operations for VDOC

---

[3] The issue about Wednesday services does not appear within the main portion of Ofori's third proposed amended complaint setting forth his claims.  Instead, it is in a section titled "Additional Points of Facts."  (3rd Am. Compl. ¶ 45(H).)  It is unclear whether he intended to assert a claim based on these allegations, but the court includes them as part of this claim and analyzes them.

| | |
|---|---|
| (C) | Mr. Leslie Fleming, WRSP Warden |
| (D) | Mr. Carl Manis, WRSP Warden |
| (E) | Mr. J. Combs, Assistant Warden |
| (F) | Mr. D. Anderson, Assistant Warden at times and also Major/Chief of Security |
| (G) | Mr. C. King, Captain (and sometimes Major) |
| (H) | Ms. R.D. Young, Operations Manager |
| (I) | Mr. Brown, Captain (and sometimes Operations Manager) |
| (J) | Mr. J. Mitchell, WRSP Chaplain |
| (K) | Mr. R Reagan, WRSP Chaplain |
| (L) | Mr. D. Collins, WRSP Chaplain |
| (M) | Mr. R.J. Cochrane, Lieutenant (then Captain) |

(*Id.*)

In their motion to dismiss, defendants seek dismissal of all claims against them. Their grounds for dismissal are similar as to many of the claims. In pertinent part, they contend that Ofori has failed to allege that any defendant was personally liable for the violation of his rights. For each claim, they also argue that Ofori has failed to allege facts adequate to state a claim.

The facts in support of each claim will be discussed in context below.

## II. DISCUSSION

### A. Motion to Amend

The court first addresses Ofori's motion to amend (Dkt. No. 55) in conjunction with his latest proposed third amended complaint (Dkt. No. 58-1). Leave to amend should be freely given, Fed. R. Civ. P. 15(a), but leave to amend may be denied for several reasons, including where the amendment would be futile. *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006); *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008) (noting that an amendment is futile if the amended complaint would not survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)).[4] Other reasons for disallowing

---

[4] Internal citations, alterations, and quotation marks are omitted throughout this opinion, unless otherwise noted. *See United States v. Marshall*, 872 F.3d 213, 217 n.6 (4th Cir. 2017).

amendment include where it would prejudice defendants and where it is brought in bad faith. *Laber*, 438 F.3d at 427.

Defendants oppose the third amended complaint on the grounds that allowing amendment would be prejudicial.  In particular, they note that it "seeks to add a new defendant, alleges new facts regarding events that postdate the original filing of this case, and includes new factual details" regarding Ofori's claims.  (Opp'n to Mot. to Amend 1, Dkt. No. 56.)  They argue that allowing amendment "at this stage 'would undermine the substantial interest in finality in litigation and unduly subject [Defendants] to the continued time and expense' of responding to Ofori's ever-expanding allegations." (*Id.* at 4 (quoting *United States ex rel. Nathan v. Takeda Pharms. N. Am., Inc.*, 707 F.3d 451, 461 (4th Cir. 2013)).)  The court has carefully considered whether to allow amendment and has concluded that, on balance, it is appropriate to allow Ofori to amend.

As to futility, Ofori's proposed third amended complaint purports to correct the deficiencies identified by defendants in their motion to dismiss.  The proposed amendments include, for example, some additional detail about what specific defendants are alleged to have done or on what basis he seeks to hold some defendants liable.  Moreover, with the amendments at least a few of his claims survive dismissal.  Accordingly, the amendment is not entirely futile.

As to prejudice, an amendment is not prejudicial if it "merely adds an additional theory of recovery to the facts already pled and is offered before any discovery has occurred." *Laber*, 438 F.3d at 427.  Here, Ofori offers more than just an additional theory; he in fact adds allegations about the personal involvement of certain defendants, additional facts to support the ways in which certain policies impact his religious exercise, and other facts.  At the same time, discovery has not yet occurred, which weighs against a finding of prejudice.  And while he is attempting to

add a new defendant, Cochrane, that defendant is referenced in only two claims—Claims 3 and 7—and the court is dismissing those claims, at least as against Cochrane, for failure to state a claim for which relief can be granted.[5]  So, the new defendant will not need to be added or served, and that will not prevent the case from moving forward or cause additional delay.

In opposing his motion to amend, defendants focus on Ofori's delay in bringing his latest amendment, and they correctly note that the case remains in the pleading stage more than three years after the original complaint in Case No. 7:18-cv-587 was filed, more than two years after this case was created, and more than a year after defendants' initial response.  (*See* Opp'n Mot. Dismiss 3.)  Not all of that delay is attributable to Ofori, however.  And the Fourth Circuit has made clear that "[d]elay alone . . . is an insufficient reason to deny" a motion to amend.  *Id.*

On balance, and although there might be some prejudice to defendants from having to respond to amended allegations after the case has been pending for a long time, the court cannot find that it outweighs the preference for resolving cases on their merits.  *See Laber*, 438 F.3d at 426.

Moreover, the court cannot find bad faith on the record here, looking only at this case and not Ofori's other cases.  Defendants correctly note that Ofori has not offered any reason why he could not have learned of the facts he has added before his original complaint or before he filed any of his other amended complaints.  Moreover, his amendments appear to be attempts to overcome the pending motion to dismiss, which is generally discouraged.  *See Googerdy v. N.C. Agric. & Tech. State Univ.*, 386 F. Supp. 2d 618, 623 (M.D.N.C. 2005) (denying motion to amend where proposed amendment was brought "solely to circumvent" a motion to dismiss and collecting authority for the position that "courts look disfavorably on motions to amend brought

---

[5]  To the extent claims against Cochrane are being dismissed, the court *sua sponte* dismisses those claims for failure to state a claim pursuant to 42 U.S.C. § 1997e(c)(1).

for the purpose of circumventing dispositive motions).  But unlike another of Ofori's cases in which the court recently disallowed his request to file yet another amended complaint,[6] the court has not yet issued an opinion on the merits in this case.  Thus, it is again a close call, but the court concludes that the preference for resolving cases on their merits also outweighs any facts that might suggest Ofori acted in bad faith.  *Cf. Laber*, 438 F.3d at 426.

In sum, and in view of the totality of the record, the court will allow amendment.  The court grants leave to amend only in part, though, because, even with the amendments, some of Ofori's claims are subject to dismissal.

## B.  Motion to Dismiss – Legal Standard

Defendants' motion to dismiss (Dkt. No. 50) seeks dismissal of all claims against them.  A motion to dismiss under Rule 12(b)(6) tests the complaint's legal and factual sufficiency.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 677–80 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554–63 (2007); *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008).  To withstand a Rule 12(b)(6) motion, a pleading must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678.  In considering the motion, the court must construe the facts and reasonable inferences "in the light most favorable to the nonmoving party." *Massey v. Ojaniit*, 759 F.3d 343, 347 (4th Cir. 2014).  A court need not accept as true a complaint's legal conclusions, "unwarranted inferences, unreasonable conclusions, or arguments." *Giarratano*, 521 F.3d at 302.  *Pro se* complaints are given a liberal construction.  *Laber*, 438 F.3d at 413 n.3.

## C.  Initial Matters

Before turning to Ofori's claims and the law applicable to them, the court notes and

---

[6] *Ofori v. Clarke*, No. 7:20-cv-00343, 2022 WL 2904878, at *2 (W.D. Va. July 22, 2022).

rejects two aspects of Ofori's proposed third amended complaint.  First, the document purports to incorporate by reference other attachments and amendments into every other paragraph or subparagraph.  The court has considered the proposed third amended complaint in its entirety, but it treats that document as a stand-alone document that does not incorporate any other document or any prior complaint by reference, either in whole or in part.  Put differently, in evaluating the futility of the motion to amend and in ruling on the motion to dismiss, the court relies solely on the allegations in Dkt. No. 58-1.[7]

Second, Ofori states that he is suing on behalf of himself and all others similarly situated. (Dkt. No. 58-1, at 2.)  And throughout his proposed third amended complaint, he often refers to the effects of certain policies on other Muslim inmates.  As Ofori repeatedly has been advised, however, he may not prosecute a *pro se* action on behalf of any other inmate, nor may he base standing in the case on anything that has happened to any other inmate, as opposed to injuries or alleged violations that he personally experienced.  *See Oxendine v. Williams*, 509 F.2d 1405, 1407 (4th Cir. 1975) ("[I]t is plain error to permit this imprisoned litigant who is unassisted by counsel to represent his fellow inmates in a class action."); *Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 629 F.3d 387, 396 (4th Cir. 2011) (explaining that a plaintiff does not have constitutional standing absent an "'injury in fact' that is concrete and particularized," among other requirements).  Thus, to the extent his complaint is based on a violation of another inmate's rights or purports to seek relief on behalf of any other inmate, those portions are not

---

[7] This creates a somewhat unusual situation, in that the court is addressing a motion to dismiss that was filed in response to an earlier version of the complaint.  Nonetheless, the court believes this approach is in the interest of judicial economy and efficiency, particularly because the complaints are fairly similar and because this is a case where the court has authority to *sua sponte* dismiss claims for failure to state a claim.  *See* 28 U.S.C. § 1915(e)(2)(B)(ii); 42 U.S.C. § 1997e(c).  Allowing amendment and then requiring an answer (or potentially another motion to dismiss) before addressing Ofori's claims on their merits for the first time would keep this case in the pleading stages even longer.  That course of action would not serve the parties, the court, or the interest of judicial efficiency.

considered by the court and any such claims are dismissed.

## D. General Legal Principles

As noted, Ofori does not clearly identify what specific claims he is bringing against which defendants.  But the court construes his claims as described in the list set forth in Section I, *supra*.  Most are § 1983 claims alleging violations of his First Amendment right to freely exercise his religion, RLUIPA claims, and claims that defendants violated his Fourteenth Amendment rights under the Equal Protection Clause by treating Sunni Muslims differently from other religions.[8]  Rather than repeating the legal standards governing his claims for each claim, they are set forth here.  To the extent necessary, additional authority will be discussed in context.

### 1. Personal involvement of defendants

Liability under § 1983 is "personal, based upon each defendant's own constitutional violations."  *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001).  Thus, a § 1983 claim requires factual detail about each defendant's personal involvement.  *See Wilcox v. Brown*, 877 F.3d 161, 170 (4th Cir. 2017) (explaining that liability will lie under § 1983 only "where it is affirmatively shown that the official charged acted personally" in the violation of plaintiff's rights and affirming dismissal of claim where plaintiff did not allege personal involvement by defendant) (quoting *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977)).

It is unclear whether Ofori is attempting to assert supervisory liability claims against any of the defendants.  To state such a claim, he still must establish that the defendant's own acts, not just the subordinate's acts, violated his constitutional rights.  "Liability in this context is not

---

[8]  Ofori also references the Eighth Amendment in Claims 3 and 4.  But only Claim 4, which alleges inadequate security supervision during religious services, is properly analyzed under the Eighth Amendment.  *See United States v. Brown*, 797 F. App'x 85, 89 (4th Cir. 2019) (noting that the liberal construction of pro se pleadings includes allowing courts "to create a better correspondence between the substance of a pro se motion's claim and its underlying legal basis").  Instead of setting it forth here, the court discusses the law governing both his Eighth Amendment claim in Claim 4 and his due process claim in Claim 5 when it directly addresses those claims.

premised on *respondeat superior*, but on a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care." *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984).

To establish supervisory liability, a plaintiff must allege facts sufficient to show that the defendant (1) "had actual or constructive knowledge that [a] subordinate was engaged in conduct that posed 'a pervasive and unreasonable risk' of constitutional injury to citizens like the plaintiff"; (2) that the defendant's "response to that knowledge was so inadequate as to show 'deliberate indifference to or tacit authorization of the alleged offensive practices,'"; and (3) that there was an "affirmative causal link" between the defendant's conduct and plaintiff's "particular constitutional injury." *Wilkins v. Montgomery*, 751 F.3d 214, 226 (4th Cir. 2014) (quoting *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994)).

Because most of Ofori's claims fail against all defendants on other grounds, the court does not address this issue in the context of individual claims. The court concludes, though, that Ofori fails to allege facts sufficient to plead the supervisory liability of any defendants.

### 2. First Amendment free-exercise claims & RLUIPA claims

Both a First Amendment free-exercise claim and a RLUIPA claim require a showing that the defendant imposed a substantial burden on the plaintiff's religious exercise. *Greenhill v. Clarke*, 944 F.3d 243, 253 (4th Cir. 2019) (setting forth the elements of a claim alleging a violation of the Free Exercise Clause in this context, which requires plaintiff to demonstrate that he holds a "sincere religious belief" and that "a prison practice or policy places a substantial burden on his ability to practice his religion"); 42 U.S.C. § 2000cc-1(a) (directing that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or

confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that" the burden is "in furtherance of a compelling governmental interest" and "is the least restrictive means of furthering that . . . interest").

For either type of claim, the plaintiff bears the initial burden of establishing that the government's actions substantially burdened his exercise of religion.  *Holt v. Hobbs*, 574 U.S. 352, 358 (2015).  "[A] substantial burden is one that puts substantial pressure on an adherent to modify his behavior and to violate his beliefs or one that forces a person to choose between following the precepts of her religion and forfeiting governmental benefits, on the one hand, and abandoning the precepts of her religion on the other hand."  *Greenhill*, 944 F.3d at 250 (citing *Lovelace v. Lee*, 472 F.3d 174, 187 (4th Cir. 2006)).  Moreover, to prove a violation of either RLUIPA or the First Amendment's free exercise clause, a prisoner must show a "conscious or intentional interference" with his rights; mere negligence is insufficient.  *Lovelace*, 472 F.3d at 194–95, 201–02.

The plaintiff "is not required . . . to prove that the exercise at issue is required by or essential to his religion."  *Krieger v. Brown*, 496 F. App'x 322, 325 (4th Cir. 2012) (citing *Cutter v. Wilkinson*, 544 U.S. 709, 725 n.13 (2005)).  Nevertheless "at a minimum the substantial burden test requires that a . . . plaintiff demonstrate that the government's denial of a particular religious . . . observance was more than an inconvenience to one's religious practice."  *Smith v. Allen*, 502 F.3d 1255, 1278 (11th Cir. 2007), *abrogated on other grounds by Sossamon v. Texas*, 563 U.S. 277 (2011).

For a RLUIPA claim, once a plaintiff produces *prima facie* evidence to support the claim that the challenged practice or law substantially burdens his religious exercise, the burden shifts to the government.  Specifically, under RLUIPA, the government bears the burden of persuasion

to show that the practice or policy is the least restrictive means of furthering a compelling governmental interest.  42 U.S.C. § 2000cc-2(b).  "The least-restrictive-means standard is exceptionally demanding, and it requires the government to show that it lacks other means of achieving its desired goal without imposing a substantial burden on the exercise of religion by the objecting party."  *Jehovah v. Clarke*, 798 F.3d 169, 177 (4th Cir. 2015) (quoting *Holt*, 574 U.S. at 364–65).  "If a less restrictive means is available for the Government to achieve its goals, the Government must use it."  *Holt*, 574 U.S. at 365.

In evaluating whether the least-restrictive means test is satisfied, courts must give "due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources."  *Cutter*, 544 U.S. at 723.  "RLUIPA . . . is not meant to elevate accommodation of religious observances over the institutional need to maintain good order, security, and discipline or to control costs."  *Baranowski v. Hart*, 486 F.3d 112, 125 (5th Cir. 2007).  However, courts should not "mechanically accept" prison administrators' rationale for restricting religious exercise.  *Lovelace*, 472 F.3d at 190.

Under the First Amendment, a policy or regulation is valid so long as it is "reasonably related to legitimate penological interests."  *Turner v. Safley*, 482 U.S. 78, 89 (1997).  This standard "affords less protection to inmates' free exercise rights than does RLUIPA."  *Lovelace*, 472 F.3d at 199–200.  In deciding whether there is a reasonable relation between the policy and asserted interest served by it, courts should examine:

> (1) whether there is a "valid, rational connection" between the prison regulation or action and the interest asserted by the government, or whether this interest is "so remote as to render the policy arbitrary or irrational"; (2) whether "alternative means of exercising the right . . . remain open to prison inmates"; (3) what impact the desired accommodation would have on security staff,

inmates, and the allocation of prison resources; and (4) whether there exist any "obvious, easy alternatives" to the challenged regulation or action.

*Wall v. Wade*, 741 F.3d 492, 499 (4th Cir. 2014); *Turner*, 482 U.S. at 89–92.

In weighing these factors, the Court must "respect the determinations of prison officials." *United States v. Stotts*, 925 F.2d 83, 86 (4th Cir. 1991).  Further, the Court also must avoid "the micromanagement of prisons," *id.* at 99, and instead "accord substantial deference to the professional judgment of prison administrators." *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003).  A plaintiff has the burden of proof under the *Turner* analysis to disprove the validity of the prison regulation at issue.  *Id.*

There is also a difference in the remedies available for the two types of claims.  Under RLUIPA, Ofori may not recover damages against defendants in either their official or individual capacities.  *Sossamon*, 563 U.S. at 288 (holding damages are unavailable for official-capacity claims); *Rendelman v. Rouse*, 569 F.3d 182, 184 (4th Cir. 2009) (holding individual-capacity damages are unavailable under RLUIPA when invoked as a spending clause statute).  *See also Burke v. Clarke*, 842 F. App'x 828, 836 (4th Cir. 2021) (explaining that under RLUIPA, the prisoner-plaintiff could obtain only equitable relief, not damages).  By contrast, damages in a § 1983 action may be awarded against a state official in his or her individual capacity for a First Amendment violation, so long as the defendant is not entitled to qualified immunity.  *Burke*, 842 F. App'x at 836–37.

### 3.   Equal Protection claims

To prove an equal protection claim, a litigant "must first demonstrate that he has been treated differently from others with whom he is similarly situated." *Veney v. Wyche,* 293 F.3d 726, 730 (4th Cir. 2002) (quoting *Morrison v. Garraghty,* 239 F.3d 648, 654 (4th Cir. 2001)). Two groups of persons are "similarly situated" only if they "are similar in all aspects relevant to

14

attaining the legitimate objectives" of the policy or legislation. *Van Der Linde Housing, Inc. v. Rivanna Solid Waste Auth.*, 507 F.3d 290, 293 (4th Cir. 2007).  Once such a showing is made, then the court will determine "whether the disparity in treatment can be justified under the requisite level of scrutiny."  *Veney*, 293 F.3d at 731 (quoting *Morrison*, 239 F.3d at 654).

### E.  Ofori's Claims

#### 1.  Claim 1 – Separation of Sunni Muslim inmates into separate worship groups

Ofori alleges that all of the Sunni Muslims at WRSP are not permitted to gather altogether, except "once every few weeks/months," whenever a qualified recognized religious representative or volunteer is available or on special religious holidays.  (3rd Am. Compl. ¶¶ 16–17.)  At other times, he must attend services only with inmates from his building instead of with a larger groups of inmates.  These services are led by an inmate from that building who WRSP staff has deemed "qualified."  Ofori states, however, that services have sometimes been taken over by inmates with "extremist" views.

He asserts that dividing the Sunni Muslim inmates into groups for services is problematic for the practice of his religion because "[a] man's salah (prayer) with another man is worth more than his salah individually, and his salah with two men is worth more than his prayer with only one man.  The more there are, the more loved by Allah."  (*Id.* ¶ 17.)

Ofori states that he complained about this issue to four of the WRSP defendants (Fleming, Combs, Anderson, Young), but he was told that Clarke & Robinson had allowed them to separate the groups to address security issues.  (*Id.*)

In an apparently related claim, Ofori contends that because of the separate services, there have been "inadequate inmate" leaders who were "unorthodox" in charge of the services for the building where he was housed, B building.  According to him, all of the inmates who could

"properly lead prayers" and were most knowledgeable about Sunni Islam were housed in C building.  He also claims that some of the leaders had "violent and extrem[ist] view of a gang-like mentality."  (*Id.* ¶¶ 21–22.)  He again complained to Fleming, Combs, Anderson, and Young, who refused to alter the policy, and he asked other WRSP defendants for assistance (Reagan, King, Brown, and Collins), who said they could not do anything about it.  (*Id.* ¶ 23.)

### a.  First Amendment/RLUIPA

With regard to this claim, the court concludes that Ofori has failed to allege a substantial burden on his religious practice, and so both his First Amendment and RLUIPA claims fail.  In particular, he has not alleged facts to plausibly show that his faith requires that he congregate with *all* of the Sunni Muslim inmates at WRSP.  And while Ofori's faith teaches that the more people praying together, "the more loved by Allah," he does not allege that an inability to worship with all of the Sunni Muslims at WRSP means that his prayers will not be heard or that it has any other effect on his ability to practice his faith.  Further, he acknowledges that he is able to attend communal services with other Sunni Muslim inmates from his building, and he does not state that the numbers of inmates attending are insufficient to exercise his religion.  Thus, he has not alleged that this policy has put "substantial pressure" on him to violate his beliefs or made him unable to practice his religion.  *See Goins v. Fleming*, No. 7:16CV00154, 2017 WL 4019446, at *7 (W.D. Va. Sept. 12, 2017) (holding that dividing Sunni Muslims at WRSP into groups for services does not substantially burden plaintiff's religious practice).

Likewise, as to any leaders with "extremist" views, Ofori has not specified with any particularity what about the views is extremist.  Instead, this statement appears to depend entirely on Ofori's subjective assessment, and is a vague and unworkable standard by which to evaluate any impact on his religious practice.  Nor has he explained how listening to a leader with views

16

that differ from his own, or who makes certain statements with which he disagrees, has substantially burdened his religious exercise.  For all of these reasons, the court concludes that Ofori has failed to allege that the policy of separating Sunni Muslims for services places a substantial burden on his religious exercise.  His First Amendment and RLUIPA claims based on these allegations fail.[9]

> ### b.  Equal Protection

Ofori also fails to state an equal protection violation based on this practice or policy.  He states that Christian/Kairos services are allowed to attend services together.[10]  He also alleges that inmates who participate in educational and vocational programs are permitted to attend those programs as a group regardless of where they are housed.  (3rd Am. Compl. ¶ 18.)  As noted, to state an equal protection violation, Ofori must show that he is similarly situated to persons in another group in all relevant respects.  *Veney*, 293 F.3d at 730.  Ofori, however, offers no factual allegations to show that the WRSP Sunni Muslim and Christian/Kairos groups are similarly situated.  He gives no information about whether the other groups have the same or similar numbers of inmates, have the same availability of qualified religious representatives or volunteers to lead services, or meet in the same facilities or facilities with the same inmate capacity.  He has failed to plausibly allege an equal protection violation based on different religions allegedly being treated differently.  *See Goins*, 2017 WL 4019446, at * 8 (rejecting equal protection challenge on same facts).

---

[9]  The court further notes that, even if it did substantially burden his religion, this policy of limiting very large religious gatherings of inmates certainly has a rational relation to security at the institution, which is its stated purpose according to Ofori.  Thus, the First Amendment claim—and any claim for damages—would fail for this additional reason, as well.

[10]  Ofori refers to "Kiros" services, but the court believes that is a reference to Kairos Prison Ministry, which describes itself as a "Christian faith based ministry which addresses the spiritual needs of incarcerated men, women, youth, and their families."  Kairos Prison Ministry International, *About Us*, https://www.mykairos.org/about.html (last visited August 11, 2022).

The fact that vocational and educational programs bring together inmates from different buildings does not support an equal protection claim, either.  On their face, such programs are different from religious programs.  Moreover, Ofori again fails to allege that those programs have the same or similar number of inmates, same level of supervision, or meet in the same facilities.  He simply has not alleged facts to show that they are similarly situated.  His equal protection claim thus fails as a matter of law.

### 2. Claim 2 – Failure to provide Islamic television channels and visitation for Muslim holy days

Ofori alleges that VDOC inmates are given access to 4 or 5 Christian cable channels or stations and permitted visitation during "the major Christian holy days." He asserts that the same privileges are extended to Jewish inmates "during Hannukah, etc." (3rd Am. Compl. ¶ 35.)  He claims, though, that there is no Sunni Muslim programming available, and he has not been permitted personal visitations from family and friends during religious feasts or celebrations.  He does not identify with any specificity to what programming he is referring,

As part of the same claim, he references that, when he first arrived at WRSP and had not yet been approved to attend services, he wrote to Chaplain Mitchell and asked for some Sunni Islamic reading materials.  Mitchell told him that he did not have any books to send at that time, but he sent Ofori a "printed prayer schedule." (3rd Am. Compl. ¶ 36.)  When Ofori complained, Mitchell said that he only had some Christian and Jewish videos that he was allowed to show, but he did not have any Islamic videos or materials.  Mitchell told Ofori that Clarke, Robinson, Fleming, and Combs were responsible for that and he should raise the issue with them.

Lastly, as part of this claim, he states that his personal religious material "went missing" when he was placed in segregation, and it has not been returned to him.

### a. First Amendment/RLUIPA

Ofori has failed to allege facts sufficient to show a substantial burden on his faith as a result of any of the lack of Muslim "religious programming," not being permitted visitors during Muslim holidays, insufficient reading material, or the loss of his Muslim reading material.  First of all, he does not allege that access to television programming or to visitation at certain holidays are part of his faith or religious practice at all, let alone how they are important to his religious exercise.  He also fails to identify any specific religious programming that he seeks to watch. Indeed, the only specific reference he makes is that he would like to watch "Al-Jazeera," which the court presumes is a reference to Al Jazeera America.  Al Jazeera America is "available through a number of major television providers" in the United States and describes itself as a "news channel," not a channel with religious programming.[11]  Regardless, he has failed to allege or explain how the lack of either this programming or visitation has substantially burdened his religious practice.

Likewise, Ofori does not allege that the denial of Muslim reading materials, or the confiscation of his religious material, impacted his ability to practice his religion or, if so, how it did so.  He has thus failed to allege a substantial burden as to these incidents, either.  As noted, moreover, Ofori was told that the facility had not received donated programs via video, and that it relied on donations of both videos and reading materials, an allegation that he does not challenge.  Another judge of this court granted summary judgment for defendants on a claim that plaintiff's First Amendment rights were violated where the jail provided a non-denominational Christian video for a "service," but not a Muslim video.  There, as is alleged here, the evidence showed that the jail relied on donated programming and the jail had not received any donations

---

[11] Al Jazeera America, *FAQ: What is Al Jazeera America?*, http://america.aljazeera.com/tools/faq.html#1 (last visited August 11, 2022) ("Al Jazeera America is an award-winning American news channel from the Al Jazeera Media Network.  We offer objective, fact-based, in depth news . . . ."); *see also* Aljazeera.com (last visited August 11, 2022) (setting forth various news stories).

of taped services or other materials from any Muslim group.  *Firewalker-Fields v. Lee*, No. 7:17-cv-00400, 2019 WL 4783112, at *2, *5–*8 (W.D. Va. Sept. 30, 2019), *appeal docketed*, No. 19-7497 (4th Cir. Oct. 11, 2019).  The *Firewalker-Fields* court also relied on authority that rejected a requirement that defendants must accommodate every religious holiday and requirement of a religion, regardless of the number of prisoners who practice that religion and regardless of the availability of volunteers, space, or time.  *Id.* at *6 (citing, for example *Smith v. Kyler*, 295 F. App'x 479, 481 (3d Cir. 2008), and *Adkins v. Kaspar*, 393 F.3d 559, 565 (5th Cir. 2004)).

The court also has considered the Fourth Circuit's recent decision in *Greenhill v. Clarke*, 944 F.3d 243 (4th Cir. 2019), but the facts here are easily distinguished.  In *Greenhill*, the court held that a VDOC inmate stated a claim under RLUIPA where he alleged that he was denied access both to in-person group religious services and television services.  VDOC attempted to justify the denial of the television viewing on the grounds that television viewing was a privilege that had to be earned by an inmate—like Greenhill —who was at a particular security level.  The Fourth Circuit found that violated RLUIPA, stating that "access to religious exercise is a right" and may not be "used as a carrot to encourage inmate improvement and overall safety." *Id.* at 250–51.  The plaintiff in *Greenhill*, however, was not otherwise permitted to attend religious services, unlike Ofori.  Moreover, that plaintiff was forced to either listen to or watch Christian programming or return to his cell during the limited time he had to be out of his cell, which the court held plausibly imposed a substantial burden on his religion.

Here, by contrast, Ofori is able to attend weekly services.  Further, as already noted, he has failed to allege or explain how the unspecified "religious" programming he seeks is important to his faith or how it burdens his religious exercise to not have access to it.

For these reasons, Ofori's RLUIPA and First Amendment claims based on these

allegations must be dismissed.  *Cf. Shabazz v. Johnson*, No. 3:13cv282, 2015 WL 789200, at *8

(E.D. Va. Feb. 24, 2015) (citing *Coleman v. Caruso*, 413 F. App'x 866, 875–76 (6th Cir. 2011);

*Van Wyhe v. Reisch*, 581 F.3d 639, 657 (8th Cir. 2009)) (explaining that inmate was not

substantially burdened by not being able to access religious materials by the method of his

choosing).

### b.   Equal Protection

Just as with his first Equal Protection claim, Ofori has not alleged facts to show that

Christian or Jewish participants, who he alleges are allowed access to religious programming and

entitled to additional visitation during and around Christian holidays (naming Christmas and

Hannukah), are similarly situated to Sunni Muslim inmates in all relevant respects.  For example,

he does not provide any allegations about the sizes of these groups, how many holidays each

receives visitors, or whether the programming or visitation is significant to the religious exercise

of these faiths.  Moreover, he does not allege that the visitation privilege around those holidays

are only extended to Christian inmates.  He therefore has not alleged that he has been treated

differently from similarly situated inmates as a result of intentional discrimination, and his equal

protection claim must be dismissed.

### c.   Property-Based Claims

As for his religious property going missing, Ofori has not identified what that property

was or how any such property ties into his religious exercise.  Thus, he fails to state a First

Amendment or RLUIPA claim based on its deprivation.  Such claims also fail because Ofori has

not alleged that his property was *intentionally* taken, as opposed to it being lost through

negligence or mistake.  *See Lovelace*, 472 F.3d at 194–95, 201–02 (intentional conduct is

required to state a First Amendment Free Exercise or RLUIPA claim).  Nor could these claims

survive against any of the named defendants, because he does not identify which of the defendants, if any, allegedly took his property.  As a First Amendment or RLUIPA claim, then, the fact that his property went missing fails to state a claim.

Furthermore, any constitutional claim based on Ofori's being deprived of his property is subject to dismissal.  Allegations that prison officials deprived an inmate of his property, whether intentionally or as a result of negligence, do not state any constitutional claim "if a meaningful post-deprivation remedy for the loss is available." *Hudson v. Palmer*, 468 U.S. 517, 533 (1984).  Because Ofori possessed tort remedies under Virginia state law, *see* Virginia Code § 8.01–195.3, it is clear that he cannot prevail in a constitutional claim for any property loss in this case.[12]

### 3.  Claim 3 - Prohibition on prayer in the pod and in the outdoor recreation space

Ofori alleges that his faith requires him to pray five times daily and to do so in a prostrate position.  He claims that WRSP has a policy of not allowing prostrate prayer except in an inmate's cell.  Thus, if he is in the pod or out in the recreation yard when it is time for him to pray, he must return to his cell.  Afterward, he is not permitted to return to the pod or to outside recreation.  On two occasions in May 2016, he tried to offer prayer in a secluded area of the back of the cell so that he could stay in the pod and still access the telephone, kiosk, and shower.  But an unnamed correctional officer kept him from completing his prayer and told him that he must return his cell.  As a result of this policy, he is sometimes deprived of recreation (or portions of recreation) in order to be able to pray as his faith requires.  (3rd Am. Compl. ¶¶ 13–15.)

Ofori approached his unit manager and defendant Cochrane about the issue in June 2016,

---

[12] Ofori does not appear to be claiming that his property was destroyed pursuant to a prison policy, so the court does not address the slightly different analysis for a deprivation pursuant to policy, which can sometimes require pre-deprivation procedures.  *Parratt v. Taylor*, 451 U.S. 527, 537 (1981); *Zinermon v. Burch*, 494 U.S. 113, 128 (1990) (explaining that a violation occurs only if the procedural protections in the policy are inadequate to ensure that deprivations are lawful).

who said they were carrying out the decrees of the WRSP Warden and Assistant Warden (Fleming and Combs), Chief of Security (Anderson) and Operations Manager (Brown).  When Ofori complained to those individuals verbally in June 2016, they said that was the practice/custom at WRSP, and that they had approved it, as had defendants Clarke and Robinson.

He further claims that Christians can sit while praying and so they are not required to return to their cells to pray.

### a.   First Amendment/RLUIPA

As an initial matter, it is unclear whether the inability to pray kneeling or prostrate in the pod and at recreation substantially burdens Ofori's religious beliefs.  Consistent with Ofori's allegations, the court in *Goins v. Fleming*—where the plaintiff challenged the same policy at WRSP during the same time-frame—described the policy as follows:

> VDOC policy provides for opportunities when inmates can meet for religious services in designated areas under supervision, wear kufis, and use prayer rugs for kneeling prayers. Inmates may also use prayer rugs in their cells. The defendants explain, however, that for safety and security reasons, inmates cannot gather for group prayers or kneel on a prayer rug during in-pod recreation. The defendants state that religious activities in the pod may offend inmates of other faiths and that prayer rugs can be a slip hazard, cause friction between gangs, or be used as protection while attacking another inmate or staff. Inmates may conduct individual prayers in the pod if they remain in an upright position and do not gather in groups.

2017 WL 4019446, at *4.  The essential facts of this policy are admitted by Ofori, in that he notes he is permitted to use his prayer rug and pray kneeling or prostrate in his cell, and that he also is permitted to pray kneeling or prostrate during weekly religious services.  Ofori's complaint seems to be that he occasionally will be required to miss in-pod or outside recreation because if he leaves to pray, he is not permitted to return.

It is at least questionable whether this policy places a "substantial burden" on his

religious faith, given the alternatives available to exercise his faith by praying in his cell.  *But see Goins*, 2017 WL 4019446, at *4 (noting that defendants did "not contest" plaintiff's claim that his inability to kneel for prayer in the pod places substantial burdens on his religious practice). And he has not alleged, for example, that his faith's prayer requirements would always (or even usually) deprive him of in-pod recreation.  Indeed, he does not say how often this occurs, except to note two specific occasions in 2016 where he attempted to pray and was asked to return to his cell.  To be a substantial burden, a plaintiff must "demonstrate that the government's denial of a particular religious . . . observance was more than an inconvenience to one's religious practice." *Smith*, 502 F.3d at 1278.

Nonetheless, the court will assume for purposes of ruling on the motion to dismiss that the policy imposes a "substantial burden."  The court nonetheless finds no violation of Ofori's First Amendment or RLUIPA rights.  The *Goins* court determined that this same policy satisfied both the First Amendment's "rational basis" test, as determined by analyzing the *Turner* factors, and RLUIPA's requirement that the policy "furthers a compelling governmental interest by the least restrictive means," 42 U.S.C. § 2000cc-2(b).  Its reasoning applies with equal force to Ofori's claim:

> [Plaintiff] offers no disputed fact contradicting the defendants' evidence of significant potential security hazards presented by allowing inmates to carry and use their prayer rugs during in-pod recreation.
>
> [Plaintiff] also does not suggest any less restrictive means to address these risks than the present no-rug policy and does not dispute the evidence that inmates are permitted to pray during pod recreation if they do so in an upright position. On the present record, I conclude that the defendants have shown that prohibiting inmates from kneeling on their prayer rugs during in-pod recreation furthers compelling security interests by the least restrictive means, *id.*, and is thus also rationally related to legitimate penological purposes under *Turner*.

24

*Goins*, 2017 WL 4019446, at *5.[13]  Like Goins, Ofori has not suggested "any less restrictive means" to address the prohibition on prayer rugs in the pod.  His RLUIPA claim, and therefore his First Amendment claim, both fail.

    *b.  Equal Protection*

Although Ofori complains that Christians are permitted to pray while in the pod, he acknowledges that they can pray while sitting up and that he is also entitled to pray while sitting up.  Thus, the two groups are not similarly situated in all respects because one can pray without kneeling or lying prostrate and the other cannot.  His equal protection claim is subject to dismissal because he has failed to allege that he is treated differently from a similarly situated person or group.

### 4.  Claim 4 – Inadequate security supervision during Muslim religious services

Ofori alleges that, in violation of a VDOC policy requiring an "in-room officer at all times" during religious services, there is no in-room security staff during Sunni services and officers do not make rounds.  (3rd Am. Compl. ¶ 24.)  He acknowledges that there is an officer at the towers or control booth post, but he says those officers have other duties that occupy their attention.  (*Id.* ¶ 25.)

He claims that he is distracted from his prayer because of concerns about being attacked. He further states that on one occasion an inmate who "subscribed to the extremist ideology" had attacked two officers, apparently, at some time prior to the service.  When plaintiff and others

---

[13]  The burden on a RLUIPA claim would be on defendants to produce their justification for a particular policy and to explain why it was implemented, which generally cannot be done on a motion to dismiss.  Here, though, the *Goins* case involved the exact same policy, at the same facility, and in the same time-frame.  The *Goins* defendants (while not identical to those here) included the same WRSP Warden and Assistant Warden (Fleming and Combs) who presumably were responsible for the policy, and they offered affidavits in *Goins* regarding the challenged religious accommodations.  *Goins*, 2017 WL 4019446, at *2.  Thus, the same justifications given in *Goins* will almost certainly be given here, and they are sufficient to satisfy both RLUIPA and the First Amendment.

tried to complain about that inmate's presence to the inmate leading the service, the leader and two other "visitors" pulled out shanks and threatened to get violent.  (*Id.* ¶ 26.)  Ofori claims that because no staff was present, no staff observed this incident..  (*Id.*)

To remedy these problems, Ofori seems to be asking that one person be designated to teach the Sunni Islamic faith and give weekly sermons to all Muslims, and that the person subscribe to the same precise religious beliefs as he does.  He also blames Chaplain Mitchell for the failure to supervise or participate in any of the Sunni Muslim services, although it is unclear what he believes Mitchell—who is not a security officer—could do if he were present.

### a.  First Amendment/RLUIPA

First of all, a violation of VDOC's own policy, without more, does not give rise to a constitutional violation.  *See Riccio v. Cnty. of Fairfax*, 907 F.2d 1459, 1469 (4th Cir. 1990).  Furthermore, the allegations set forth by Ofori—which are strikingly similar to those alleged by the plaintiff in *Goins*—do not show a substantial burden on his faith because they do not pressure him to violate his beliefs or make the practice of his religious beliefs significantly more difficult.  Here, like in *Goins*, Ofori has described a single incident in which he alleges he and others were physically threatened by the leader when they complained on one occasion about not wanting another inmate present.  Goins, too, complained that he once was threatened.  But that one incident does not plausibly allege facts to show that Ofori was pressured to change his attendance at services or that the mere fact that a security officer was not present in the room substantially burden his prayer or practice of religion.  Absent any substantial burden, his First Amendment and RLUIPA claims fail as a matter of law.

### b.  Eighth Amendment

To the extent this claim is brought under the Eighth Amendment, Ofori likewise fails to

state a plausible claim. To succeed on an Eighth Amendment claim based on unconstitutional

conditions, an unconstitutional conditions claim, a prisoner must show that: (1) objectively, the

deprivation was sufficiently serious, in that the challenged, official acts caused denial of "the

minimal civilized measure of life's necessities"; and (2) subjectively, the defendant prison

officials acted with "deliberate indifference to inmate health or safety." *Farmer v. Brennan*, 511

U.S. 825, 834 (1994). To satisfy the first element, the prisoner must show "significant physical

or emotional harm, or a grave risk of such harm," resulting from the challenged conditions.

*Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995).

Ofori has not alleged adequate facts to meet his pleading burden. As the *Goins* court

explained,

> Goins mentions one assault that allegedly occurred in July 2015
> during a Sunni service in the chow hall. He presents no evidence
> that he or anyone else suffered substantial harm, or that a pattern of
> similar incidents must have put the defendants on notice that the
> chow hall monitoring practices create a significant risk to the
> safety of the Sunni worshipers. *See Farmer*, 511 U.S. at 837
> (requiring evidence of defendants' deliberate indifference to
> excessive risk of serious harm).

*Goins*, 2017 WL 4019446, at *8.

Like the plaintiff in *Goins*, Ofori does not allege that "he or anyone else suffered substantial

harm" or a "pattern of similar incidents." *See id.* Indeed, although *Goins* alleged that an actual

assault had occurred during a service, Ofori alleged only that there was an incident in which he

and others were threatened.

Moreover, to the extent that any WRSP officials had knowledge of any potential security

threat at Sunni Muslim services, Ofori alleges that they actually took steps to rectify it (by purging

the list of attendees permitted to attend services and then rebuilding it, by performing strip-searches

of attendees, etc.) In short, he has not alleged facts sufficient to show deliberate indifference.

Thus, any claim based on a violation of the Eighth Amendment fails and must be dismissed.

### 5.  Claim 5 – Monetary charges for accepting daytime Ramada meals

Ofori next alleges that he was charged seventy cents on several different occasions for taking a meal tray during Ramadan, even when he did not actually take a tray.[14]  Specifically, he claims that, in mid-2018, he received a receipt showing that $4.20 was being taken from his inmate account for meals, and he was told the deduction was for accepting meal trays.  When he raised the issue with his unit manager, that person "passed him off to [defendant Cochrane], who failed to address his complaint."  Then, defendant Manis found Ofori's grievance on the issue unfounded, despite the fact that there was "no evidence" that Ofori had ever accepted a tray during Ramadan. (3rd Am. Compl. ¶¶ 33–34.

#### a.  First Amendment/RLUIPA

For several reasons, these allegations fail to state a First Amendment or RLUIPA violation.  First of all, it is unclear whether—or how—being charged less than $5 during Ramadan for trays he did not accept placed a substantial burden on Ofori's beliefs.  It was an inconvenience perhaps, but he does not allege that those charges made the practice of his religion significantly more difficult or forced him to abandon his religious practices.  Such mere inconveniences do not constitute a "substantial burden" under the First Amendment or RLUIPA. *Smith*, 502 F.3d at 1278 (reasoning that policies that only make the practice of one's religion less convenient are not a "substantial burden").

Second, Ofori does not allege that he was intentionally deprived of the trays; instead, he appears to allege that it was a mistake.  Such unintentional actions cannot give rise to a First

---

[14]  Ofori's factual allegations on the point are a little unclear, but the court believes that an offender can sign up to receive meals during Ramadan *after* sundown, when a Muslim is not required to fast, in lieu of regular daytime meals.  Then, if an offender accepts a regular, daytime tray, he is charged for that tray.

Amendment or RLUIPA claim.  *Lovelace*, 472 F.3d at 194–95, 201–02.  Even if the later failure to refund his money (after he grieved the issue) was not a mistake and could somehow be construed as intentional, this does not state a valid claim.  In short, the fact that there was insufficient evidence to find his grievance founded and that his grievances were denied does not give rise to liability by Warden Manis, where Manis simply determined that the grievance was unfounded.  *Brown v. Va. Dep't of Corr.*, No. 6:07-CV33, 2009 WL 87459, at *13 (W.D. Va. Jan. 9, 2009) ("[T]here is no liability under § 1983 for a prison administrator's response to a grievance or appeal.").

For all of these reasons, any First Amendment or RLUIPA claim based on these allegations must be dismissed.

### b.  Equal Protection

Although defendants do not interpret this claim as asserting an equal protection challenge, Ofori states, in conclusory fashion, that other religions whose adherents fast are not subjected to similar charges.  He does not indicate, however, that those other groups are similarly situated in all respects, as required to state an equal protection violation.  For example, he does not indicate how often, or for how many days, other faiths fast during the day, or whether there are trays those inmates receive at night when they are on a list.  Nor does he indicate how many prisoners are part of each such other religious group.  He also fails to allege that members of other religious groups were never mistakenly charged for trays they did not take.  Because of these failures, any equal protection claim based on these allegations fails as a matter of law.

### c.  Due Process[15]

To the extent Ofori is attempting to make a due process argument, his argument fails.

---

[15]  The claim also is not a valid "takings" claim under the Fifth Amendment, as correctly noted by defendants.  (*See* Mem. Supp. Mot. Dismiss 28, Dkt. No. 51.)

First of all, this court and others have repeatedly held that small fines do not trigger a constitutionally protected liberty interest. *E.g.*, *Johnson v. Adams*, No. 7:22-CV-00341, 2022 WL 2873180, at *3 (W.D. Va. July 21, 2022) (collecting authority). And neither negligent nor intentional deprivations of property violate the Due Process Clause where, as here, adequate post-deprivation remedies are available under state law. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984); Va. Code § 8.01-195.3 (setting forth claims for which there are remedies under the Virginia Tort Claims Act). Thus, to the extent that his claim can be construed as a due process claim, it fails as a matter of law. *See id.*

### 6. Claim 6 – Ofori's not being permitted to register for Islamic programs

Ofori alleges that, on two different occasions, he was denied the ability to attend religious services for several months. First, upon his arrival to WRSP in March 2016, he requested to be on the list for Sunni Muslim services, but he was not enrolled. He says that the reason why he was not enrolled was that there was a policy limiting "enrollment" to 88 persons and that WRSP agents were "vehemently enforcing" that limit. It took "two to three" months before he was allowed to attend his services.

Then, "the list was purged in late 2017," and Ofori was again removed from the list. Although he claims there was "no valid reason" for the purge, he also was told (by unspecified persons) that prison officials had received information about gang members infiltrating Islamic religious programs and that was the reason for them purging the list and requiring inmates to sign up again for services. While this process played out over the course of several months, Ofori was not permitted to attend services. Ofori conveyed that he was not a gang member, documented or otherwise, and that he had been a Muslim all of his life. He was eventually allowed to attend services again.

Ofori says that, at "around the same time," officials conducted "raids" by strip-searching Sunni Muslims attending services, but Christian and persons attending other religious services were not subject to such searches.  (*Id.* ¶ 12.)

Ofori does not allege who was responsible for him not being on the list the first time, but he claims that Fleming, Combs, Anderson, and Young were enforcing the 88-person limit when he first arrived and that he complained to them during weekly rounds, but he was not immediately put on the list.

Similarly, he does not identify any individual who was responsible for the list purge in 2017 or for the conducting of the late 2017 "raids" and strip-searches.

### a. First Amendment/RLUIPA

Ofori appears to believe that the first incident in which he suffered delays was solely attributable to the 88-person limit.  But he is no longer prohibited from participating based on the 88-person limit, he was eventually returned to the list after the 2017 "purge," and he has described regular attendance at weekly services throughout much of his time at WRSP. Accordingly, any RLUIPA claim challenging these policies or incidents fails because RLUIPA can only provide injunctive relief for ongoing violations, not damages.  *See Beatty v. Johnson*, No. CIV.A. 702CV00506, 2006 WL 335599, at *3 (W.D. Va. Feb. 14, 2006) ("As [plaintiff] cannot prove any ongoing violation of his rights under RLUIPA, defendants are entitled to summary judgment as to his claims for injunctive relief."); *cf. Burke*, 842 F. App'x at 836.

 With regard to his First Amendment claim, and as defendants note, Ofori fails to allege any facts to show that the programs he sought to attend were integral or important parts of his faith, such that his inability to attend them imposed a substantial burden on his religious exercise. Thus, it is unclear whether he has adequately alleged a substantial burden on his religious

exercise.

Even if he has, though, he fails to show a First Amendment violation.  Ofori's allegations themselves make plain that both the 88-person limit in 2016 and the "purge" in 2017, as well as the strip-searches, were all related to security concerns at the prison.  Based on his own allegations, moreover, there were valid security concerns arising from events at the Sunni Muslim services.  After analyzing the *Turner* factors, the court easily concludes that limitations on the number of persons permitted at a service, a purge designed to root out gang members who were not participating in the Sunni services in good faith, and the strip searches all bear a rational relationship to a valid security concern.  Thus, none of these policies violates the First Amendment.  All First Amendment claims based on these policies must be dismissed.

> *b.  Equal Protection*

Defendants do not construe this claim as asserting an equal protection violation, but again, Ofori alleges that these policies were not applied to Christian groups.  As with his other equal protection claims, his claims vaguely state that Christian groups were treated differently, without offering much in the way of factual allegations.  As with his other claims, Ofori's equal protection claim based on these policies fail because he has not adequately alleged that any other groups were similarly situated.  He acknowledges that there were security problems at Sunni services, but he does not recount any history of similar problems at any Christian services.  He also fails to identify the relative sizes of the different religious groups at WRSP.   For these reasons, any equal protection claim based on these allegations fail.

### 7.  Claim 7 – Lack of access to a bathroom, sink, or ability to clean before or during religious services[16]

---

[16]  Ofori's third amended complaint was missing the page he numbered as page 18 when the Clerk received it.  It has been docketed without that page.  Based on the context and issues before and after that page, however, it appears that the missing allegations consist of paragraph 28 and a portion of paragraph 29 and relate entirely to Ofori's claim that he was not given an ability to clean during Sunni services.  Because the court is allowing this

According to Ofori, Sunni Muslims must be clean and sufficiently washed before services.  He also says that the "the practice of holding in bodily wast[e] . . . is not allowed in Sunni Islam," and prayers will not be accepted by Allah if a person "commits any discharge of urine, or a discharge from the urethra, sperm, stool, or passing gas until he performs 'ablution.'" (3rd Am. Compl. ¶ 30.)

He states that Sunni services in "mid/late 2016 to early/mid 2017" were held in the "chow hall," and there was no access to the bathroom during services or any means for him to cleanse himself beforehand.  On several occasions during that time-frame, Sunni services were called when he was in the pod on or in the recreation yard, and unidentified WRSP staff "would not allow—nor provide enough time—for [him] to return to [his] cell to use the bathroom or perform the cleansing ritual before the service."  He also states that while in services in the chow hall, there were occasions when he needed to use the bathroom, but had to hold it, which his faith forbids during prayer.  (*Id.* ¶ 30.)  Also, he states that on several occasions when staff would allow him to return to his pod/cell in order to access the bathroom, they would not allow him to return to the service.  (*Id.* ¶ 31.)

It is unclear from the complaint whether Sunni Muslim services are still being held in the chow hall and whether there still is no way to cleanse oneself or use the restroom during services, without being prevented from returning.  And in the absence of information to the contrary, and based on the entirety of the third amended complaint, the court will presume that these violations are ongoing.

Ofori says he presented the issues to Fleming, Combs, Anderson, Young, and Mitchell

---

claim to go forward, it need not wait on the missing page before ruling on the motion to dismiss and motion to amend.  Ofori will be given an opportunity to submit the missing page, however.

but they failed to resolve them.  He also presented them to Manis and Brown in late 2017 and 2018 and to Reagan and Collins in late 2019, but they also failed to address them.

### a. First Amendment/RLUIPA

Based on the allegations in the complaint, the court concludes that Ofori has plausibly stated both a First Amendment and RLUIPA claim as to this issue.  Although the lack of bathroom access may no longer be an issue, depending on where Sunni services are now held, it is not clear from the complaint that the issue has been remedied.  And based on what Ofori has plausibly alleged, the inability to use the bathroom during services and to clean properly afterward plausibly imposes a substantial burden on his religious practice.

Moreover, because the court has no information from defendants about why bathrooms are not available or how easily requests to use the bathroom could be accommodated, it cannot say that a practice or policy disallowing bathroom access during religious services satisfies either the First Amendment or RLUIPA.  Thus, the court will allow amendment as to this claim and will deny the motion to dismiss this claim.

### b. Proper Defendants to First Amendment/RLUIPA Claim

Ofori does not allege that any of the defendants were personally involved in any of the specific incidents denying him bathroom access.  Instead, it appears that he is challenging WRSP's policy or practice of not having bathroom access during services, and certain defendants' refusal to alter the policy after he complained.  Other than saying that he "presented the issues" to various defendants—all of whom failed to address them or alter the policy/practice—Ofori does not identify who is responsible for the policies or procedures that prevent bathroom access.  Nonetheless, given that Ofori states they were presented to the WRSP warden (two wardens, actually, at different times), but the policy did not change, and that the

WRSP warden presumably has the authority to change that policy, the court will allow both the RLUIPA and First Amendment claims to continue as against the two WRSP wardens, defendants Fleming and Manis.

### c.  Equal Protection

As with Ofori's other equal protection claims, he has failed to identify other similarly situated groups because he has failed to allege that any other religious groups have held services in either the chow hall or another location with comparable facilities and been able to utilize the bathroom during religious services.  He also has failed to allege that anyone intentionally discriminated against him or Sunni Muslims, so as to state an equal protection violation.  This claim fails.

### 8.  In 2019, Ofori was prevented from (a) getting on the Ramadan list, (b) attending Eid services; and (c) attending Wednesday Taleem programs.

In his final claim, Ofori complains about a series of events that occurred in 2019. Specifically, he states that he was "unlawfully prevented" from getting on the Ramadan list for 2019, which presumably meant he could not obtain meals after sundown.  As a result, he was forced to "starve himself" during the month of fasting.  He was not permitted to bring food back to his cell and had very little in commissary funds, so he eventually broke down and ended up breaking his fast and eating before sunset.  Then, at the end of Ramadan, unidentified WRSP officials wouldn't let him attend any of the Sunni "Eid services."  He blames both of these problems on the "inadequate procedures and customs" of WRSP officials, but he does not otherwise elaborate.  (3rd Am. Compl. ¶¶ 38, 49.)

Elsewhere in his complaint, he states that in May 2019,

> WRSP officials began to deprive Sunni Muslims of their
> Wednesday Services—due to a memo by [Clarke and Robinson],
> which [laid] out several conditions (e.g., limited space, and etc.)

which said action(s) may be taken under (it) and how—but no
lawful reasons [were] given for said actions.

(*Id.* ¶ 45(H).)  He claims that he submitted a complaint and grieved this issue it through an

appeal, but he received no relief.

### a.  Personal Involvement

In this claim, Ofori fails to mention the involvement of any of the defendants in his

removal from the list, with one exception.  Specifically, he claims that he complained to

Chaplain D. Collins about both the fact that he was not on the Ramadan list, but Collins did not

fix the problem or allow him to be placed back on the Ramadan list.  He claims that Collins's

reply to his complaint "failed to take a full account of [Ofori's] circumstances" and did not allow

Ofori to be on the Ramadan list in order to properly comply with Ramadan's dietary restrictions.

(3rd Am. Compl. ¶ 39.)  He also alleges that he met with Collins face-to-face on September 19,

2019, concerning not being permitted to attend any of the "Eid" services at the end of Ramadan,

and that Collins made Ofori unspecified "promises" about the issue, but then failed to fulfill

those promises.  He also claims, in conclusory fashion, that Manis, Anderson, and King received

grievances from him, but they failed to address the issues.  (*Id.* ¶ 40.)  Likewise he claims he

"verbally presented" the issue regarding the Wednesday services to several defendants, "without

any resolve."  (*Id.* ¶ 45(H).)

### b.  First Amendment/RLUIPA

Ofori's allegations about being denied participation in Ramadan and attending a service

in 2019 are similar to the allegations in *Lovelace v. Lee*, 472 F.3d 174 (4th  Cir. 2006).  The

*Lovelace* court held that the removal of the plaintiff from the Ramadan list imposed a

"substantial burden" on his rights under RLUIPA and the First Amendment.  Accordingly, for

the RLUIPA claim, the burden then shifted to defendants to show that the policy that resulted in

36

plaintiff's removal from the list was the "least restrictive means of furthering a compelling governmental interest." *Id.* at 189.  Ultimately, the court there held that defendants had failed to meet their burden.  Unlike here, though, the record in *Lovelace* at least contained some rational from defendants, because the district court addressed the claim at the summary judgment stage.

Ofori's allegations are somewhat unclear as to exactly what happened.  He faults "inadequate procedures" but does not point to any particular policy that kept him from participating.  Instead, it appears that he is alleging that the failure to get on the list initially was the result of negligence.  And negligence, as noted, is insufficient to state a claim under either the First Amendment or RLUIPA.

As to Chaplain Collins, though, the allegations are different.  Although the initial failure to place Ofori on the list was allegedly the result of negligence,[17] Ofori alleges that he spoke with Chaplain Collins about the error, but Collins would not place him back on the list.  Ofori does not provide any details about why or why Collins would not provide him relief, but he alleges that Collins refused to consider all of Ofori's circumstances.  Similarly, with regard to the inability to attend the Eid services (which was because he was not on the list), Ofori alleges Collins made him "promises" and then failed to fulfill them.

Having considered all of Ofori's allegations, and at this stage of the case where the court has no information from Collins (or any defendant) about why Ofori was removed and then not promptly reinstated to the Ramadan list if it was an error, the court the court believes that Ofori's allegations about being deprived participation in Ramadan and the Eid services plausibly state a claim that his First Amendment rights were violated, but only against Collins.

---

[17]  Notably, Ofori does not attribute this failure to any defendant.  Because Ofori does not allege that any defendant was personally involved in his not being put on the list to begin with, that allegation does not state a claim against any of the named defendants.

As for any claim under RLUIPA related to Collins' refusal to put him back on the Ramadan list or to allow him to attend Eid services, this incident occurred in the past, and Ofori does not allege that it is the result of any policy, that it has happened again in the years since, or that it is likely to happen in the future. Because there is no ongoing violation of his religious rights with regard to this, his RLUIPA claim must be dismissed because RLUIPA only permits injunctive relief to prevent future harm. *See Beatty*, 2006 WL 335599, at *3 ("As [plaintiff] cannot prove any ongoing violation of his rights under RLUIPA, defendants are entitled to summary judgment as to his claims for injunctive relief."); *cf. Burke*, 842 F. App'x at 836.

The claim regarding Wednesday services is on different footing, primarily because it utterly lacks any factual allegations to show that the inability to attend Wednesday services imposed a "substantial burden on his faith." He also fails to describe who made the decision at WRSP to discontinue services, and he fails to identify any defendant who was personally involved in that decision. Similarly, the mere statement that the matter was grieved or was "verbally presented" to certain defendants, but not resolved to Ofori's satisfaction, does not provide a basis to hold any of those defendants liable. He does not say when he presented the issues, what was said, or what the response was. This portion of his claim thus fails as a matter of law.

To summarize, parts (a) and (b) of this Claim—regarding Ofori's removal from the Ramadan list and Collins's refusal to place him back on, as well as the denial of his ability to participate in Eid services, survives the motion to dismiss. Those portion of this claim will be permitted to proceed as a § 1983 claim alleging a First Amendment claim against Collins only. The remainder of this claim will be dismissed.

### III.  CONCLUSION

For the reasons discussed above, Ofori's motion to amend will be granted in part and denied in part, and defendants' motion to dismiss also will be granted in part and denied in part. The only claims that will remain in the case are:

1. From Claim 7 – a § 1983 claim alleging a First Amendment violation and a RLUIPA claim against defendants Fleming and Manis, based on Ofori's being deprived of access to a restroom before or during services so as to properly cleanse and relieve himself; and

2. From Claim 8 – a § 1983 claim alleging a First Amendment violation against defendant Collins only, arising from Ofori being refused participation in the 2019 Ramadan list and 2019 Eid services.

An appropriate order will be entered.

Entered: August 22, 2022.


*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge